**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter P. SHAFER, III, et al.,
Defendants-Appellants.**

**No. 30649.**

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1972.

Rehearings and Rehearings Denied
En Banc April 6, 1972.

K. Key Hoffman, Jr., Trueheart, McMillan, Russell & Hoffman, San Antonio, Tex., for Walter Pressly Shafer, III.

Ross H. Hemphill, Dallas, Tex. (Court appointed) for Gene Kelly.

Royal D. Adams, Adams & Hunter, San Antonio, Tex., for Joseph J. Gregg.

Seagal V. Wheatley, U. S. Atty., Henry J. Novak, Jr., Wayne F. Speck, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The appellants were convicted in a jury trial of conspiracy to import to the United States from Turkey marijuana in the form of hashish in violation of 21 U.S.C. § 176a.

The convictions must be reversed because prejudicial items that had not been admitted into evidence were sent to the jury room along with the exhibits.

The government's theory of the case was as follows. Appellants flew together from San Antonio, Texas, to Istanbul, Turkey, where they registered at the Istanbul Hilton Hotel. Kelly delivered to Gurkan, supervisor of services for the hotel, four packages containing marijuana and arranged that Gurkan send them by mail, two to Kelly at an address in San Antonio, Texas, and two to a service station in San Antonio in which Shafer had an interest.

### 1. Items erroneously sent to jury room

At a time when counsel were out of the courtroom the jury retired to deliberate and the exhibits were sent out to them. A number of items not in evidence were erroneously included. Some had been marked for identification and objections to admissibility sustained. Others purported to support various pretrial discovery motions of one or more defendants. When the defendants learned what had occurred they called the matter to the attention of the trial judge who, after verdict, ruled that the error was not prejudicial.

■ The most clearly prejudicial item was the sworn complaint by a customs agent on the basis of which arrest warrants of defendants had been obtained. The document stated as a fact the agent's conclusion that the three defendants conspired to smuggle thirteen pounds of hashish and marijuana into Texas from Turkey. Facts recited as the basis for that statement included some matters that had been proved at trial with little, if any, conflict in the evidence, and to that extent the document was merely cumulative. But the complaint described as a fact this overt act:

On or about Aubust [sic] 28, 1969, the defendants mailed and caused to be mailed at Istanbul, Turkey, approximately 13 lbs. of marihuana and hashish addressed to:

> Shafer Texico, 5427 Blanco, San Antonio, Texas, and Mr. Gene Kelly, 112 W. Castle Lane, San Antonio, Texas

This statement went to the heart of the case. The only direct evidence connecting any of the defendants to mailing or causing to be mailed was the testimony of Gurkan that the packages were delivered to him, and the mailing instructions given, by a man resembling Kelly. Gurkan could not be certain that Kelly was the person, and stated that the man might have been Kelly and might have been anybody else. He could not identify Shafer or Gregg as being the persons registered at the hotel under those names. Thus the direct evidence that Kelly "mailed or caused to be mailed" was based on a single unsure identification, and the evidence that Gregg and Shafer "caused to be mailed" was wholly circumstantial. The sworn statement of the customs agent was, in effect, a statement that defendants were guilty.[1] In addition, the agent had no personal knowledge of the matters recited as facts, his statements being based on what others had told him, and some of this was second or third hand. Also his references to conspiracy to smuggle described an offense different from that for which defendants were indicted. There is no way that we can say sending this document to the jury was not seriously prejudicial.

Another item was a copy of Gregg's bill from the hotel. Evidence that persons with the names of defendants were registered at the Hilton, and the dates thereof, was in the form of oral testimony by Gurkan of entries he had observed on the hotel registration records. The records themselves were not offered.[2]

---

1. By analogy we note the care with which the courts have protected the jury from exposure to nonevidentiary matter presented to them in the form of prosecutorial argument. See Hall v. United States, 419 F.2d 582 (5th Cir. 1969).

2. Receipt of this parol evidence is itself the basis for a separate claim of error,

Gregg's bill tended to show that he, and circumstantially his traveling companions Kelly and Shafer, were registered at the hotel.

■ Numerous other items were erroneously submitted to the jury, including a copy of the indictment showing substantive charges which had been dismissed, and a blackboard on which the prosecutor had summarized the testimony of various prosecution witnesses. Without considering these other items in detail, we are forced to the conclusion, based on the complaint and the hotel bill, that reversal is required. This is not a case in which the weight of the evidence is so overwhelming that the non-evidentiary matter may be considered not prejudicial. The burden is not upon the defendant to show that a document erroneously in the jury room was actually read and considered by the jury, and, at least where the document has been in the jury room for a considerable time, it may not be assumed that the jury did not see and consider it. Dallago v. United States, 138 U.S.App.D.C. 276, 427 F.2d 546 (1969); Leigh v. United States, 113 U.S.App.D.C. 390, 308 F.2d 345 (1962).

Several other matters deserve either holdings by us, or such mention as will assist the court and parties on retrial. We turn to them.

### 2. Discovery motions

An entire area of controversy concerns efforts of defendants to obtain pretrial discovery. The handling of discovery matters was error.

This particular District Court encourages prosecution and defense to participate in what is called "omnibus," which contemplates, among other things, voluntary disclosure, obviating the necessity of discovery motions by the defendant but often resulting in his disclosing matter that he could not be required to reveal. Omnibus was not put into effect in this case because one of the defendants declined to participate, and the prosecutor would not participate unless all defendants did so. Nevertheless, the United States Attorney voluntarily delivered to each defendant what he described as his "entire file." Thereafter discovery ran out of control. The court proceeded with the general approach, with some exceptions, that the voluntary disclosure by the government was all-inclusive of defendants' discovery rights —in effect, that defendants already had everything they were entitled to because they had been given what they would have received under omnibus. The defendants, on the other hand, moved ahead with the approach that the voluntary disclosure was not all-inclusive of their rights (and, in any event that the "entire file" wasn't even "entire"), and inundated the court with discovery motions—among them motions for bills of particulars, to inspect, to produce, to reveal information favorable to defendants, for preliminary examinations of witnesses so the defendants could find out what witnesses would testify, and to examine the United States Attorney under oath as to whether he had produced his complete file or had withheld some of it. Their unrestrained length and repetition, their verbosity, and the irresponsibility of some of their hyperbolic language are staggering. Some the court denied on the basis that the government had delivered the "entire file." Others we are unable to find any record of being acted upon. Others were denied with leave to reassert them at trial if appropriate, then when trial commenced, before a different judge, defendants were directed not to reassert them.

■ Despite the strains they placed upon the judicial machinery by the expansiveness and the methodology of their pursuit of discovery, it is plain that the underlying position of defendants is correct.[3] Discovery rights under

which we need not consider since we reverse on another ground.

3. However, there was no error in denial of motions for bills of particulars. The information which defendants actually were given was sufficient to obviate any necessity for granting the motions.

the Federal Rules of Criminal Procedure of defendants who are not participants in the voluntary omnibus program are not controlled by the limits of omnibus.[4] In several respects the defendants' demands were broader than the file delivered by the United States Attorney. For example, defendants sought production and inspection of various tangible objects. Also the "file" was treated by the government as consisting of documents in the possession of the United States Attorney, while some of the discovery motions sought to reach papers and items in possession of other government agencies.

### 3. Other motions

It was error to deny the motions to dismiss on the ground of delivery of the government file. The motions raised substantive legal matters unrelated to discovery. We do not pass on whether the motions have merit. But defendants are entitled to have them considered in all respects.

■ There was no error in denying motions to sever. There is no merit in Shafer's motion to suppress evidence seized from the parcels delivered to Shafer Texaco. The defendants claim the chain of events consisting of the interception of the parcels by Turkish postal authorities, delivery of them to police and drug agents, removal of portions of the marijuana, transport of parcels to the United States by nonmail channels, and delivery of them in San Antonio by postmen, is some kind of diabolical and illegal plot against defendants requiring suppression of evidence of events occurring in San Antonio when the parcels arrived and thereafter. This is preposterous. The claims of denial of speedy trial are frivolous. There was no error in refusing to transcribe grand jury minutes.

At least one of the defendants, appearing in forma pauperis, moved that he be allowed funds to employ investigations in Turkey. This was either denied or not acted upon because of the government's delivery of its file. This defendant (or defendants) is entitled to have his motions reconsidered in the light of discovery granted.

### 4. Bank records

■ Shafer moved to proceed in forma pauperis. After hearing, which revealed that the motion was patently without merit, the court denied the motion. On crossexamination of Shafer at the hearing the government asked Shafer where he kept his bank accounts, and he named a San Antonio bank as the location of an account of a company of which he and Gregg were officers. Shafer moved to suppress the evidence of the location of the account, and the motion was denied. Subsequently the government subpoenaed the bank's records of the account and introduced them to show that it was the source of funds used to buy air tickets to Turkey. If error,[5] it was harmless beyond reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The name of the company and the fact that Shafer and Gregg were participants in it were known. The location of the account was readily available by routine police investigation at San Antonio banks.

### 5.

Shafer and Gregg charge that when the United States Attorney delivered the "entire file" he withheld documents which showed up for the first time at trial. This is a serious charge, not to be undiscriminatingly made. Yet, although the point was strenuously urged in briefs, the documents alleged to have been withheld and later used were not identified or described. By written preargument inquiry, this Court requested written response from the defendants as to the identity of the docu-

---

4. However, we reject out of hand the claims of defendants that they were being punished by the court for not participating in omnibus.

5. See United States v. Branker, 418 F.2d 378 (2d Cir. 1969).

**1172**

ments and a statement of any prejudice suffered by their alleged unavailability. The written response of W. Key Hoffman, Attorney for Shafer, is ordered stricken from the files of the Court as impertinent and disrespectful.

The convictions are reversed and the cause remanded.

### ON PETITIONS FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing filed on behalf of Walter P. Shafer is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

The Petition for Rehearing of Joseph J. Gregg is denied.

The Petition for Rehearing of the United States is denied.