Amit P. Mehta, United States District Judge
I.
Defendant Abdul K. Samuels is joined in a 14-count indictment with four other defendants. See Indictment, ECF No. 22. Samuels is charged in five of those counts. Count One consists of an overarching conspiracy among all named defendants to distribute and possess with intent to distribute ("PWID") a variety of narcotics: PCP, heroin, fentanyl, buprenorphine, marijuana, and synthetic marijuana. See id. at 2-5. That conspiracy is alleged to have taken place from on or about June 2017 until February 1, 2018. See id. The conspirators' base of operations is alleged to have been a single, two-story building located at 2408 Martin Luther King, Jr. Avenue, Southeast. See Gov't's Omnibus Resp. to Defs.' Pretrial Mots., ECF No. 95, at 5 [hereinafter Gov't Resp.]. The ground floor of the building contained a barbershop, and above the barbershop were several rooms accessible by a separate, outside entrance. See id. at 5-11. During a search conducted on February 1, 2018, law enforcement recovered distribution-level quantities of narcotics, two guns, and various items used to manufacture, cut, and package narcotics. See id.
The remaining four counts against Samuels stem from a search of his residence on May 10, 2018, just over three months after the end of the conspiracy alleged in Count One. See Indictment at 8-10. At the residence, law enforcement recovered, among other things, a 12-gauge shot gun, synthetic marijuana, crack cocaine, and various matter used to manufacture, cut, and package narcotics. See Gov't Resp. at 13. Samuels' alleged possession of these items comprise Counts Nine (felon in possession of a firearm), Ten (PWID synthetic cannabinoids), Eleven (PWID crack cocaine), and Twelve (possession of a firearm in furtherance of a drug trafficking offense).See Indictment at 8-10.
Samuels now contends that Counts Nine through Twelve are improperly joined with Count One, thereby requiring severance of counts and separate trials. See Def.'s Mot. to Sever Counts, ECF No. 85 [hereinafter Def.'s Mot.]. Additionally, Defendant Anthony *17 Fields "adopt[s] and join[s]" Samuel's motion to sever. See Def.'s Mot. to Adopt and Join, ECF No. 71. For the reasons that follow, the motions to sever are denied.
II.
Samuels argues that severance for misjoinder is required under Federal Rule of Criminal Procedure 8(b). See generally Def.'s Mot. He does not contend that, even if properly joined, the counts must be severed under Rule 14. See Draft Hrg. Tr. at 14. Accordingly, with respect to Samuels, the court considers only whether the counts are properly joined under Rule 8(b).[1]
Rule 8(b) provides as follows:
Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.
As relevant here, the D.C. Circuit has interpreted the text "the same series of acts or transactions" and found that it "may not be read to embrace similar or even identical offenses, unless those offenses are related." Perry , 731 F.2d at 990. Thus, for different acts to be joined under Rule 8(b), "there must be a logical relationship between the acts or transactions within the series." Id. Stated another way, "Defendants' acts form a series within the meaning of [ Rule 8(b) ] if they constitute part of a common scheme or plan, and joinder is proper so long as the government presents evidence before trial that the defendants' offenses arose out of the same scheme." United States v. Johnson , 46 F.3d 1166, 1172 (D.C. Cir. 1995). "It is sufficient that all participated in some way in the series of transactions that link the counts, and not necessarily in each act that makes up the series." Id. ; accord United States v. Halliman , 923 F.2d 873, 883 (D.C. Cir. 1991). This Circuit recognizes a "broad policy favoring initial joinder." Perry , 731 F.2d at 991.
In this case, based on the government's proffer of evidence, see id. at 990 (recognizing that the government may proceed by pretrial proffer to establish proper joinder), the court finds that Counts Nine through Twelve are logically related to, or arise out of, the scheme alleged in Count One. Count One alleges a scheme that began on or about June 2017 and continued until February 1, 2018-the date of Fields' arrest. Fields' arrest does not, however, signify an end to the "series of acts" involving these defendants, including Samuels. Notwithstanding Fields' arrest, the concerted activities of the defendants continued, including trafficking of the same or similar substances. Notably, two of the defendants, Samuels and Lacy Hamilton, allegedly had telephone conversations with Fields while he was detained pretrial, in which Fields encouraged them to say that multiple people had keys to the barbershop.
*18 See Gov't Opp'n at 16; Aff. in Support of Applications Under Rule 41 for Warrants to Search and Seize, ECF No. 61-1, at 9-10. One could reasonably infer that the purpose of those calls was to undermine the government's case that Fields constructively possessed the narcotics and guns found within and above the barbershop. So, while the charged conspiracy may have ended on February 1, 2018, the defendants' conspiratorial conduct continued past that date.
Viewed in this way, the logical connection between Samuels' post-conspiracy possessory offenses to the charged conspiracy is evident. Fields' arrest did not end the conspirators' operations. The government's proffer establishes that both Samuels' and Lacy's trafficking activities continued. Importantly, searches of both defendants' residences turned up synthetic marijuana that was of the same compound seized inside one of rooms above the barbershop on February 1, 2018. See Gov't Opp'n at 13; Gov't Mem. for Pretrial Detention, ECF No. 7, at 21, 10 n.7. That fact alone demonstrates the connection between the charged conspiracy and Samuels' later-arising alleged offenses. Moreover, the D.C. Circuit has repeatedly recognized that "guns and drugs go together in drug trafficking." United States v. McLendon , 378 F.3d 1109, 1113 (D.C. Cir. 2004). It is therefore reasonable to connect Samuels' alleged gun possession-occurring only a little more than three months after the charged conspiracy ended-to the narcotics distribution conspiracy itself. In fact, Samuels admitted in a tape-recorded interrogation that he had possession of the gun for four years, but had never used it.
Finally, joinder is proper here because the purposes of joinder are served. See generally Perry , 731 F.2d at 990 (recognizing a "pragmatic approach" to joinder that takes into account its benefits, or lack thereof). Evidence of Samuels' later-possession of a gun and narcotics would be admissible under Federal Rule of Evidence 404(b) to prove Samuels' participation in the conspiracy. Cf. United States v. Cassell , 292 F.3d 788, 793-95 (D.C. Cir. 2002) (prior gun possession admissible under 404(b) ); United States v. Crowder, 141 F.3d 1202, 1208-09 (D.C. Cir. 1998) (en banc) (prior drug possession admissible under 404(b) ). The reverse is also arguably true, that is, evidence of his participation in a trafficking conspiracy would be admissible to prove knowledge and intent to support his post-conspiracy possessory offenses. In such circumstances, joinder is proper. See United States v. Sutton, 801 F.2d 1346, 1365 (D.C. Cir. 1986) ("[W]e cannot ignore the general policy favoring joint trials of defendants indicted together, especially when, as here, the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two defendants who are charged, inter alia, with participating in the same illegal acts.") (internal citations omitted).
Accordingly, for the foregoing reasons Samuels' Motion to Sever Counts is denied.
III.
Turning now to Fields' motion, Fields specifically argued at the hearing that the spill-over effect from a joint trial involving Samuels' post-conspiracy charges would unfairly prejudice him. See Draft Hr'g Tr. at 10. The court treats that argument as seeking severance under Rule 14. Fields, however, has come forth with no valid reason why he could not receive a fair trial if joined with Samuels' individual counts. Evidence as to those counts will not make the evidence against Samuels drastically more damaging than the evidence *19 against Fields. Nor is there reason to believe the jury will not be able to follow the court's instruction to consider the evidence relating to Samuels' individual offenses only against him. See Perry, 731 F.2d at 992 (identifying reasons for severance); Halliman, 923 F.2d at 884 (discussing severance based on "clear disparities" of evidence) (citation omitted). Fields' motion is therefore denied.

At the hearing on this matter, the court expressed uncertainty as to whether Rule 8(a), titled "Joinder of Offenses," or Rule 8(b), titled "Joinder of Defendants," controls the presented question of joinder. See Draft Hrg. Tr. at 6-9. Samuels maintained that Rule 8(b) applies because the indictment charges multiple defendants, whereas Rule 8(a) would apply to a single-defendant indictment charging multiple offenses. See id. Samuels is correct. See United States v. Perry , 731 F.2d 985, 989 (D.C. Cir. 1984) ("Where there are two or more defendants, Rule 8(b) controls joinder of both offenses and defendants."); Cupo v. United States, 359 F.2d 990, 992 (D.C. Cir. 1966) ("But Rule 8(a) deals only with charging one defendant with several offenses."). The court therefore applies Rule 8(b).